## S00Y1238. IN THE MATTER OF CHARLES T. ERION.
### (538 SE2d 427)

PER CURIAM.

The State Bar filed a Notice of Discipline against Respondent Charles T. Erion alleging violations of Standards 22 (a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with applicable laws and rules); 23 (a lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned); 44 (a lawyer shall not without just cause to the detriment of his client in effect wilfully abandon or wilfully disregard a legal matter entrusted to him); and 68 (a lawyer shall not fail to respond to disciplinary authorities in accordance with disciplinary rules) of Bar Rule 4-102 (d). The State Bar also filed a Proof of Service of Notice of Discipline and Motion for Expedited Issuance of Order and Opinion pursuant to Bar Rules 4-208.1, 4-208.2, and 4-208.3 requesting that this Court adopt the State Bar's Notice of Discipline. Although Erion was personally served with the Notice of Discipline on May 16, 2000, he failed to file a Notice of Rejection of the Notice of Discipline pursuant to Bar Rule 4-208.3 (a) and consequently, pursuant to Bar Rule 4-208.1 (b), is in default, has no right to an evidentiary hearing, and is subject to discipline by this Court. The State Bar has recommended disbarment as an appropriate sanction for Erion's violations of Standards 22, 23, 44, and 68 of Bar Rule 4-102 (d). We agree.

In the instant case, a church congregation (hereinafter "client") retained Erion for representation in a litigation matter and paid him an initial retainer of $750. Erion later requested an additional $2,000 fee, which the client gave to Erion by check. After giving Erion the additional fee, the client was unable to contact him and placed a hold on the $2,000 check. Erion subsequently failed to represent the client in the litigation matter or to refund any portion of the $750 fee, all or some of which he failed to earn. As a result of Erion's conduct, the client suffered needless worry and concern and risked the loss of legal rights and remedies available to it. Accordingly, we agree with the State Bar that disbarment is warranted as a result of Erion's violation of Standards 22, 23, 44, and 68 of Bar Rule 4-102 (d). Erion hereby is disbarred from the practice of law in Georgia. He is reminded of his duties under Bar Rule 4-219 (c).

*Disbarred. All the Justices concur, except Benham, C. J., Sears and Carley, JJ., who dissent.*

BENHAM, Chief Justice, dissenting.

I dissent because I am concerned about the Court's institutional integrity with respect to maintaining predictability, certainty and stability in attorney discipline. I believe the discipline administered in this case is draconian in its scope, inconsistent with other recent impositions of discipline, and incompatible with appropriate goals of lawyer discipline.

While a violation of Standard 44 is punishable by disbarment, imposition of that penalty in the present case is excessive. As the majority opinion recites, the only effects of Erion's failure to attend to his client's legal matters were the loss of the $750 fee the client paid, some worry and concern by the client's members, and the risk of the loss of legal rights. It is important to note that there is no suggestion that Erion's behavior resulted in the actual loss of any rights. While any violation of Standard 44 is a serious disciplinary breach that demands the imposition of an appropriate sanction, a violation that cannot be said to have caused any more actual loss to a client than the loss of the fee does not warrant what amounts to a professional death penalty.

Recent disciplinary decisions by this Court demonstrate the excessiveness of the penalty being imposed in the present case. Most telling in that regard is our decision in *In the Matter of Zoota*, 272 Ga. 496 (532 SE2d 107) (2000), where just four months ago we rejected the State Bar's call for disbarment of a lawyer who accepted payment in advance for legal services which he did not complete, who failed to communicate with his client, and who failed, as Erion has done, to respond to the State Bar's disciplinary actions against him. Zoota's failures were the same as Erion's, but we deemed it appropriate to suspend him for one year and impose conditions on his reinstatement to practice. The opinion in *Zoota* cited other cases in which attorneys charged with additional related ethical violations have been suspended with reinstatement conditional on meeting certain relevant requirements such as reimbursement of clients and completion of educational programs designed to prevent recurrence of the ethical violations. See also *In the Matter of Voss*, 272 Ga. 9 (525 SE2d 89) (2000) (18-month suspension for violation of Standards 22, 44, and 68); *In the Matter of Gardner*, 265 Ga. 482 (458 SE2d 355) (1995) (six-month suspension with conditional reinstatement for violation of Standards 22, 44, and 68); *In the Matter of Kendall*, 260 Ga. 767 (400 SE2d 13) (1991) (six-month suspension for violation of Standards 21, 44, and 68); *In the Matter of Roberts*, 257 Ga. 721 (363 SE2d 256) (1988) (six-month suspension for violation of Standards 22, 44, and 68). The punishment appropriate to Erion's violations of ethical standards would be one consistent with those cases.

It is true that the opinion in *Zoota* also cited cases in which the

same violations resulted in disbarment: *In the Matter of Smith,* 271 Ga. 432 (520 SE2d 903) (1999) (disbarred for violation of Standards 44 and 68); and *In the Matter of Woodard,* 270 Ga. 891 (515 SE2d 147) (1999) (disbarred for violation of Standards 22, 44, and 68). However, in each of those cases, the attorney was first suspended for the conduct and was disbarred only after suspension did not prompt the attorney to participate in the disciplinary process. That progression, from service of notice that a disciplinary proceeding has begun, to suspension for failure to respond, to disbarment upon continued failure to participate is a reasonable approach to lawyer discipline. The progress of the present case, moving straight to disbarment, may in an ultimate fashion serve the function of consumer protection by removing from the practice of law an attorney who has wronged a client, but it is wasteful and only partially effective. Comparing the approach taken in *Zoota* and the cases cited therein to the approach taken in the present case demonstrates the difference in effect. In the present case, the process of lawyer discipline will result in the destruction of one attorney's career for the first disciplinary action in which he has been involved, and the client will not recover the fee or gain any other relief. Had the more moderate approach of *Zoota* been employed, Erion could have been suspended with conditions including return of the fee to the client and an educational program designed to forestall future violations. If he then complied, the client would be made whole and the attorney would have a chance to move his practice back in line with the standards of our profession. If the attorney still refused to participate or to meet the conditions, disbarment could follow as it did in *Smith* and *Woodard,* supra.

In order for attorney discipline to be effective and to have meaningful impact, the process must have consistency. Our treatment of Erion is not consistent with our treatment of other similarly situated attorneys accused of violating ethical standards. Because that lack of consistency has produced an unfair result in the present case, I must dissent.

I am authorized to state that Justice Sears and Justice Carley join this dissent.

DECIDED OCTOBER 30, 2000.

*William P. Smith III, General Counsel, E. Duane Cooper, Assistant General Counsel,* for State Bar of Georgia.